KOG:2019R00387

HEE 8/21/20

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

JORGE ORENCEL,

Defendant

CRIMINAL NO. GLR 20-cr-0270
(Conspiracy, 18 U.S.C. §371; False
Statement, 18 U.S.C. § 1001(a)(2);
Failure to File Export Information, 13
U.S.C. § 305(a)(1); Attempted
Smuggling, 18 U.S.C. § 554(a);
Forfeiture, 18 U.S.C. § 981(a)(1), 21
U.S.C. § 853; 28 U.S.C. § 2461(c))

*******

## INDICTMENT

The Grand Jury for the District of Maryland charges that:

### COUNT ONE
(Conspiracy)

At all times relevant to this Indictment:

### Introduction

1.  Pursuant to United States laws and the Export Administration Regulations ("EAR"), 15 C.F.R. §§ 730-774, exporters, shippers and/or freight forwarders were required to file certain forms and declarations concerning exports of goods and technologies from the United States depending upon the circumstances of the individual export. These forms and declarations could include, but not be limited to, air waybills, packing lists, sales invoices, Shipper's Letter of Instruction, and Electronic Export Information ("EEI"). The filing of an EEI would be required

if, among other things, the value of the item to be exported exceeded $2,500, and/or if the item was being exported pursuant to an export license. An EEI would identify the nature and value of the item being exported, its true and final destination, and the identity of the individual or entity seeking to export the item. The filing of an EEI would alert the United States Department of Commerce ("DOC") to the export and enable it and other agencies to track the export and ascertain compliance with licensing and other export requirements and restrictions.

2. The United States Secretary of Commerce also had the authority to collect information from persons exporting goods from the United States pursuant to 13 U.S.C. § 301. The Foreign Trade Regulations (15 C.F.R. § 30) set forth the general reporting requirements for any commodity that had a value of $2,500 or more. 15 C.F.R. §§ 30.1, 30.2, 30.37(a).

3. The United States Principal Party in Interest ("USPPI") or its authorized agent was required to file electronic export information ("EEI") through the Automated Export System ("AES") for commodities valued at $2,500 or more. 15 C.F.R. § 30.2. The USPPI or its authorized agent had the responsibility to submit complete, correct information in AES based on personal knowledge of the facts or on information furnished by the parties to the export transaction. 15 C.F.R. §§ 30.3, 30.9. That required information included, among other things, the name of the USPPI, commodity description, shipping weight, and shipment value. 15 C.F.R. § 30.6.

### Relevant Persons and Entities

4. **JORGE ORENCEL ("ORENCEL")**, the defendant, was a resident of Silver Spring, Maryland.

5. **ORENCEL** was the owner and operator of Sumtech, Inc. ("Sumtech"), which was located in Fulton, Maryland. Sumtech was engaged in the export business and advertised

2

itself on the Internet as specializing in the distribution of American merchandise, including "high technology laboratory devices," to South America, Asia and the Middle East.

6. Company A, which was located in New York, was engaged in the business of designing and manufacturing nuclear radiation detectors, including ionization and fission chambers. Company A's products had commercial, scientific and military applications.

7. Co-conspirator #1 was an individual who purported to be a purchasing agent or broker located in Hong Kong.

### The Conspiracy

8. From in or about October 2016 and continuing until on or about August 2017, in the District of Maryland and elsewhere,

### JORGE ORENCEL

the defendant, did combine, conspire, confederate and agree with Co-conspirator #1, and other persons known and unknown to the Grand Jury, to commit certain offenses against the United States, to wit: failing to file and causing the failure to file export information in violation of 13 U.S.C. §305(a)(1); and attempted smuggling in violation of 18 U.S.C. § 554(a).

### Object of the Conspiracy

9. The object of the conspiracy was to obtain and export items to the People's Republic of China ("PRC") using false and fraudulent representations and shipping documents in order to conceal the nature of the transaction.

### Manner and Means of the Conspiracy

10. It was a part of the conspiracy that ORENCEL used email to communicate with Co-conspirator #1 in connection with obtaining ionization chambers and a fission chamber ("the Company A chambers") from Company A for export from the United States to the PRC.

3

11. It was further a part of the conspiracy that ORENCEL falsely represented in email communications with Company A that the ultimate consignee and end-user for the Company A chambers was a company located in Argentina.

12. It was further a part of the conspiracy that ORENCEL submitted to Company A an End-User Statement and a Statement by Ultimate Consignee and Purchaser for the Company A chambers that falsely represented the identity and location of the end-user to be a company in Argentina.

13. It was further a part of the conspiracy that ORENCEL, signing as the duly authorized officer and agent of Sumtech, Inc., issued and caused to be issued a Shipper's Letter of Instruction to the United Parcel Service, which was the freight forwarder, in which he falsely certified that the ultimate consignee for the Company A fission chamber was an entity located in Argentina and that it had a value of $930 in order to avoid triggering the requirement to file EEI.

## Overt Acts

14. In furtherance of the conspiracy, and to accomplish its purpose and objects, at least one of the co-conspirators committed and caused to be committed at least one of the following overt acts, among others:

a. On or about October 19, 2016, ORENCEL sent and caused to be sent an email to Co-conspirator #1 from his SumTech email address in which he assured Co-conspirator #1 that "[w]e will be careful with the information given to the supplier," in response to Co-conspirator #1's email that requested a quote for five Company A ionization chambers and one Company A fission chamber and further requested that ORENCEL "not mention sensitive end-user information or to tell them you will sell goods to Hong Kong."

4

b.      On or about October 20, 2016, **ORENCEL** sent and caused to be sent an email to Co-conspirator #1 providing a quote of $1,200 for each Company A ionization chamber and $9,300 for the Company A fission chamber.

c.      On or about October 20, 2016, **ORENCEL** sent and caused to be sent an email to Co-conspirator #1 in which he refused to lower the quoted price for the Company A fission chamber, stating:

> The manufacturer does not require export licence [sic], only an End-User certificate. We have not said that these products will go to China/Hong Kong. They asked and we mentioned one of our customers in Argentina, so having to give them the certificate with the order, probably we will have to recognize something to our client, therefore we will not be able to reduce the price from $9,300 to $9,000 to keep $300 for them as a favor.

d.      On or about October 21, 2016, in response to **ORENCEL**'s request for a description of the use and application of the chambers that he could send to Company A for the purchase, Co-conspirator #1 sent and caused to be sent an email to **ORENCEL** indicating that the end use for the Company A chambers was "to use the products in our laboratory for researching purpose…. [Ionization chamber] detecting the energy and strength of ray… [Fission chamber] detecting the neutron flux under strong ray. But I recommend you to change some words regarding the application, coz we suppose the end user contacted the manufacturer before."

e.      On or about October 26, 2016, **ORENCEL** emailed and caused to be emailed a Form BIS-711 Statement by Ultimate Consignee and Purchaser and an End User Statement to Company A, both of which falsely stated that the ultimate consignee and final end-user for the Company A chambers was an entity located in Argentina.

5

  f. On or about August 22, 2017, **ORENCEL** submitted and caused to be submitted to United Parcel Service a Shipper's Letter of Instruction and Sumtech Invoice #12001 for the Company A fission chamber that falsely listed a value of $930 for the item with a "ship to" address and ultimate consignee in Argentina.

  g. On or about August 25, 2017, **ORENCEL** sent and caused to be sent an email to Co-conspirator #1 in which he stated that the Company A fission chamber had been picked up from the manufacturer and that "[n]ow the situation is with paperwork because it was issued with the name of the fake end-user (remember needed to say so they can sell to us due to the nature of the chamber?) I am trying to figure out how to export with our own paperwork."

18 U.S.C. § 371

## COUNT TWO

(Failure to File Export Information)

The Grand Jury for the District of Maryland further charges:

1. The allegations of Count One, Paragraphs 1 through 7 and 9 through 14, are incorporated by reference.

2. On or about August 22, 2017, in the District of Maryland and elsewhere,

**JORGE ORENCEL,**

the defendant, did knowingly fail to file export information, and willfully caused another to fail to file export information, through the Automated Export System for a Company A fission chamber valued at more than $2,500, in violation of 15 C.F.R. §§ 30.2, 30.37.

13 U.S.C. § 305(a)(1)

## COUNT THREE

(Attempted Smuggling of Goods)

The Grand Jury for the District of Maryland further charges:

1. The allegations of Count One, Paragraphs 1 through 7 and 9 through 14, are incorporated by reference.

2. On or about August 22, 2017, in the District of Maryland and elsewhere,

**JORGE ORENCEL,**

the defendant, fraudulently and knowingly attempted to export from the United States certain merchandise, articles and objects, to wit: a Company A fission chamber, and fraudulently and knowingly facilitated the transportation of said fission chamber prior to exportation, contrary to the laws and regulations of the United States, by failing to file export information through the Automated Export System in violation of 15 C.F.R. § § 30.2, 30.37.

18 U.S.C. § 554(a)

## FORFEITURE

The Grand Jury further finds that:

1. Upon conviction of an offense in violation of 18 U.S.C. §§ 371, 554(a), and 13 U.S.C. § 305(a)(1), as alleged in Counts One, Two and Four, the defendant

### JORGE ORENCEL

shall forfeit to the United States:

    a. any of the defendant's interest in, security of, claim against, or property or contractual rights of any kind in the goods or tangible items that were the subject of the violation, including but not limited to the Company A fission chamber;

    b. any of the defendant's interest in, security of, claim against, or property or contractual rights of any kind in tangible property that was used in the export or attempt to export that was the subject of the violation; and

    c. any of the defendant's property constituting, or derived from, any proceeds obtained directly or indirectly as a result of the violation.

2. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 981(b) and 28 U.S.C. § 2461(c).

13 U.S.C. § 305(a)(3)
18 U.S.C. § 981(a)(1)
21 U.S.C. § 853
28 U.S.C. § 2461(c)
Rule 32.2, F.R.Crim.P

*Robert K. Hur/kog*

Robert K. Hur
United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**

Foreperson

8/25/2020
Date